WILLIAM S. HORN, PLAINTIFF IN ERROR, v. WILLIAM W. QUEEN, DEFENDANT IN ERROR.

1. **New Trial:** JURISDICTION OF COURTS OF EQUITY. Where it would be proper for a court of law to grant a new trial, if the application had been made while that court had the power, it is equally proper for a court of equity to do so, if the application be made when the court of law has no means of granting such trial; but it will only interfere in case of newly discovered evidence, surprise or fraud, or where a party is deprived of the means of defense by circumstances beyond his control.

2. ———: H. commenced an action in the district court, to enjoin the collection of a judgment obtained against him before a justice of the peace, and praying for a new trial of the cause, alleging that he was called away on account of the dangerous illness of his son, during which time service of summons was made by leaving a copy at his residence, that he returned home on the day of the trial, but was too sick to attend thereto on that day and for twenty days thereafter, when it was too late for the court in which judgment was rendered to grant any relief, and that he had a good defense to the action, which was fully set forth. *Held*, on demurrer, that a new trial should be granted.

ERROR to the district court for Lancaster county.

William S. Horn brought suit against William W. Queen alleging in his petition that one A. C. Combs had purchased a tract of land in Lancaster county, by pre-emption certificate, of the Burlington and Missouri River Railroad Company, which Combs afterwards sold and transferred to Horn; that thereupon, under the contract of purchase, he entered into the possession and enjoyment of said premises, a considerable portion of which he broke up and prepared for cultivation; that afterwards one Charles L. Gumaer entered the said tract of land at the local land office, under the provisions of the United States homestead act, although said tract of land was covered by the grant of lands made by Congress to the Burlington and Missouri River Railroad Company, and within the time prescribed by law erected a house thereon

and has continued to reside on said premises; that afterwards the defendant, William W. Queen, made application at the local land office to enter the same tract of land, which application was allowed, but that said defendant Queen never resided on the land, either before or since his alleged homestead entry; that the action of the land officers in allowing said homestead entries was wholly erroneous and wrongful and without any authority of law; that said defendant, after procuring his pretended homestead entry, entered upon the land plowed and broken up by the plaintiff, and of his own wrong, sowed the same with oats, and that when said oats had ripened the defendant again wrongfully and unlawfully entered upon the land and cut and harvested said oats, the defendant well knowing that the plaintiff had broken and plowed the land under claim of title thereto from the railroad company; that plaintiff entered upon the land and took away the oats thereon for his own use, amounting to two hundred and twenty-one bushels, and not exceeding in value twenty-five dollars; that afterwards the defendant Queen commenced an action against the plaintiff to recover the sum of one hundred and fifty dollars, for alleged trespass in entering upon said land and taking away the oats, before A. L. Palmer, Probate Judge, in which plaintiff entered an appearance and the same was by said judge afterwards certified to the district court on the ground that the question of title was raised in the action; that afterwards the defendant commenced another action before C. J. Greene, justice of the peace, for the same alleged trespass in entering upon the land and carrying off the oats raised thereon by Queen, the summons in which action being made returnable on the 25th day of January, 1873, at 10 o'clock, A. M.; that said summons was served by leaving a copy thereof at the residence of the plaintiff; that at the time of the service of the summons the plaintiff was absent in Nemeha

county at the bedside of a sick son; that on the day the summons was returnable the plaintiff returned home, being carried there, himself very sick, and was wholly unable to attend to any kind of business for more than twenty days; that his daughter delivered the summons to him but he was too ill in body at that time to give the matter attention; that he learned the case was adjourned on account of his absence, but that in fact this was not true, for judgment had been rendered against him for the sum of one hundred dollars and costs, upon which execution issued. The plaintiff prayed for a new trial and the allowance of a temporary injunction. To this petition the defendant demurred, and upon argument thereof, judgment being rendered sustaining the demurrer and dismissing the petition, Horn brought the cause here by petition in error.

*Seth Robinson*, for plaintiff in error.

The rule is, and it has not been changed by the code, that where it would be proper for a court of law to grant a new trial, if the application were made while that court had power to do so, it is equally proper for a court of equity, if the application be made on grounds arising after it is too late for the court of law to administer relief. *Hoskins v. Hattenback*, 14 *Iowa*, 314. *Collyer v. Langfort's Adm'r*, 1 *A. K. Marshall*, 174. *Deputy v. Tobias*, 1 *Blackf.*, 311.

*Tuttle & Harwood*, for defendant in error.

I. The remedy given by statute is exclusive. *Genl. Stat.*, 685. Courts will not relieve. *Sedgwick on Stat. and Const. Law*, 322.

II. The justice had jurisdiction of the case; the judgment was legally obtained, and is not exorbitant;

courts of equity will not relieve. 3 *Grah. & Wat., New Trials*, 1356.

III. A court of equity will not grant a new trial where the object is simply to reduce the damages. The case at bar amounts to that. *Smith v. Lowry*, 1 *Johns. Ch.*, 320.

IV. A court of equity will not set aside a judgment legally obtained, and grant a new trial, when the petition does not show that the result would be changed if a new trial is had. *Taggart v. Wood*, 20 *Iowa*, 36.

MAXWELL, J.

It has been held that a new trial would be granted, upon a motion for a postponement on the ground of the absence of a witness, when one of the defendants, at the time the case was called for trial and the motion was made, lay sick in Philadelphia, and the other was unable to attend court, each being ignorant of the other's situation, and consequently the requisite proof was not furnished by reason of the absence of the witness. *Sherrard v. Olden*, 1 *Halstead*, 344.

And it was held sufficient to grant a new trial where the plaintiff was prevented from attending court in consequence of his daughter being at the point of death, and several witnesses though summoned were prevented from attending. *Peebles v. Ralls*, 1 *Little*, 24.

And the illness of defendant which prevented his procuring the attendance of material witnesses, or being present himself to move for a continuance, has been held to be ground for a new trial. *Stewart v. Durret*, 3 *Monroe*, 113.

And in general, the absence of a party from unavoidable circumstances, where it is apparent he has a defense

to the action, will be sufficient to authorize a new trial. *Vannerson v. Pendleton*, 8 *Smede & Marshall*, 452.

Blackstone says, " either party may be surprised by a piece of evidence which, had he known of its production, he could have explained or answered; or he may be puzzled by a legal doubt which a little recollection would have solved. In the hurry of a trial the ablest judge may mistake the law and misdirect the jury. The jury are to give their opinion instanter, that is before they separate, eat or drink, and under these circumstances the most intelligent and best intentioned may bring in a verdict which they themselves upon cool deliberation would ask to reverse. * * * Granting a new trial under proper regulations cures all these inconveniences, and at the same time preserves entire and renders perfect that most excellent method of decision which is the glory of the English law." 3 *Blackstone*, 391.

" But courts do not lend too easy an ear to every application for a review of the former verdict; they must be satisfied that there are strong probable grounds to suppose that the merits have not been fairly and fully discussed and that the decision is not agreeable to the truth and justice of the case. A new trial will not be granted where the value is too inconsiderable to merit a second examination. It is not granted upon nice and formal objections which do not go to the real merits. It is not granted in cases of strict right or *summum jus* where the rigorous exaction of extreme legal science is hardly reconcilable to conscience. Nor is it granted where the scales of evidence hang nearly even." 3 *Blackstone*, 392.

In the early history of the common law the principal remedy for the reversal of a verdict unduly given was by writ of *attaint*, but the hardships connected therewith seem to have led the courts first to modify verdicts, and afterwards to grant new trials.

The grounds for a new trial under our statutes are substantially the same as at common law. There is also a provision in our statute that where the grounds for a new trial could not with reasonable diligence have been discovered until after the term at which the verdict, report of referee, or decision, was rendered or made, the application may be made by petition filed as in other cases, on which a summons shall issue, etc., but no petition shall be filed more than one year after the final judgment is rendered; yet equity will grant relief in a proper case where fraud has been practiced by the successful party in obtaining the judgment, or where from accident or unavoidable circumstances, without fault on the part of the party applying therefor, a full and fair trial has not been had. But courts of equity have always proceeded with great caution in awarding new trials at law. At the present day they are seldom applied to for that purpose, as courts of law are liberal in exercising the same jurisdiction, and it has been held to be unconscionable and vexatious to bring into courts of equity a discussion which might have been had at law. 1 *Schoales v. Lefroy*, 20. But in general where it would be proper for a court of law to have granted a new trial, if the application had been made while that court had the power, it is equally proper for a court of equity to do so, if the application be made when the court of law has no means of granting a new trial. *Colyer v. Langfort*, 1 *A. K. Marshall*, 237. It will only interfere however, in case of newly discovered evidence, surprise, fraud, or the like, where the party is deprived of the means of defense by circumstances beyond his control. 1 *Litt.*, 140. 2 *Bibb.*, 241.

In the case of *Lieby v. Heirs of Ludlow*, 4 *Ohio*, 493, the court held that "before a court of chancery will order a cause to be reheard at law they will require the complainant to show that he used due diligence in pre-

paring and conducting his defense at law, and that he was prevented from then making it, by circumstances beyond his control." The same rule is laid down in *Insurance Company v. Hodgson*, 7 *Cranch.*, 336. *Duncan v. Lyon*, 3 *Johns. Ch.*, 356. We think this is clearly the law that a party must have done all that he could under the circumstances, that he has not been negligent, and that he must show he has a defense to the action.

In this case the demurrer admits as facts that the plaintiff was called away to Nemeha county to see his son who was dangerously ill, that he returned on the day of the trial, when he received a copy of the summons, but that he was too ill in body to give the matter any attention, and that the illness continued with a slight intermission for more than twenty days. The demurrer also admits that the plaintiff was the assignee of the certificate of purchase of the tract of land from the railroad company, and had broken up the land on which the grain was raised; that the defendant Queen having made a second homestead entry, the first one by Gumaer being uncanceled, of the tract of land, yet that he never resided on the land or complied with the provisions of the law. Taking these facts as true, the plaintiff had a defense to the action, and it is clearly against equity to refuse him an opportunity of a fair trial.

We think a sufficient excuse is shown for the failure of the plaintiff to appear and defend the action, or to seek to set aside the default, or to appeal. A party cannot be guilty of negligence who is too ill to give the matter any attention, and the law does not require the performance of impossible conditions. The object of the law is to administer justice. To secure this object new trials are granted. In this case, after the expiration of ten days the court in which the action was tried could grant no relief whatever. This is clearly a case calling for the

interposition of a court of equity, subject to such terms as to payment of costs as may be prescribed by the district court. The judgment of the district court is reversed and cause remanded for further proceedings.

REVERSED AND REMANDED.

GANTT, J., concurred. LAKE, Ch. J., did not sit.