Morse v. Engle.

evidence, and the judgment of the district court is affirmed.

JUDGMENT AFFIRMED.

THE other judges concur.

---

W. V. MORSE & CO., APPELLEES, v. CATHERINE ENGLE, APPELLANT.

[FILED JANUARY 28, 1890.]

1. **Judgment:** VACATING: UNAVOIDABLE CASUALTY. F. J. E. and C. E. were husband and wife, living together as such with their family at their house in A. A deputy sheriff came to the house for the purpose of serving a summons in a foreclosure case, in the district court, upon C. E., the wife, and F. J. E., the husband, met him at the door; upon his asking for Mrs. E., informed him that she was in the parlor busy with company, thereupon the deputy sheriff handed to and left with F. J. E. for C. E. a proper copy of said summons and made return of the summons accordingly. F. J. E. did not deliver said copy to C. E., nor inform her thereof, but kept it or destroyed it. After final decree entered in the cause, C. E. petitioned the court to set aside the decree and grant her a new trial, and in her petition set up the said facts as unavoidable casualty or misfortune preventing her from defending the action. Upon appeal, *held*, not sufficient to entitle her to such relief under the statute.

2. **The Evidence** considered, and *held*, to sustain the findings and order of the district court.

APPEAL from the district court for Hamilton county. Heard below before NORVAL, J.

*Hainer & Kellogg,* and *Phil Likes,* for appellant, contended, *inter alia:* Courts of equity, even in the absence of a statute, will vacate a judgment on account of unavoidable casualty, etc. (*Horn v. Queen,* 4 Neb., 108; *Douglas Co. v. Connell,* 15 Id., 617; *Thompson v. Sharp,* 17 Id., 71; *Drin-*

*ger v. Receiver*, 8 Atl. Rep. [N. J.], 811; 2 Pomeroy, Eq.
Jur., 836.) It has never been held that a judgment obtained
on personal service may not be vacated, and it is a rule that
the return of an officer may be impeached for fraud. (*Nie-
tert v. Trentman*, 4 N. E. Rep. [Ind.], 306 ; *Newcomb v.
Dewey*, 27 Ia., 381 ; *Bond v. Wilson*, 8 Kan., 228; Free-
man, Judgments, sec. 109.)

*Charles B. Keller*, and *Agee & Stevenson, contra.*

COBB, CH. J.

This appeal comes to this court from the judgment of
the district court of Hamilton county, upon the petition of
Catherine Engle to vacate and set aside the judgment and
decree of said court theretofore rendered in a cause wherein
W. V. Morse & Co. were plaintiffs and said Catherine Engle,
F. J. Engle, and John Raben were defendants, and for a
new trial in the said cause. For ground of such applica-
tion she sets forth in her said petition substantially that
the said F. J. Engle and petitioner were, and for more
than twenty-one years last past had been, husband and wife,
and with their children constituted one family ; that on the
7th day of February, 1885, the said petitioner was, and
for a long time prior thereto had been and continued
to be, the owner in her own right, in fee simple, of lots 7,
and 8 in block 21, in the original town of Aurora, and
being the same property described in the pleadings and de-
cree in said cause ; and during the whole of said time ac-
tually used and occupied the same and the whole thereof
with her said family as a homestead ; that said property is
of the value of less than $2,000, and at no time has been
worth to exceed that sum ; that on the 7th day of July,
1885, the said John Raben was justly indebted to the
plaintiff W. V. Morse & Co. in the sum of $1,400 and
that said petitioner was in no way bound for the pay-
ment of said debt, nor interested in the payment thereof,

nor had she any knowledge of said debt, and the said Raben being pressed for the payment of said debt, and being threatened with suit thereon, for the purpose of avoiding such suit, and designing and intending wickedly and corruptly to cheat, wrong, and defraud said petitioner, obtained her signature to the note and mortgage declared on by the plaintiffs in this cause by fraud, deceit, and false representations, in this, to-wit : The said John Raben prevailed upon and induced the said F. J. Engle, husband of petitioner, to present, and he did present, said note and mortgage to said petitioner and obtain her signature thereto by concealing from her the true nature and import of said papers, and each of them, and falsely stating to her that a defect had been found in her title to said lots and that it was necessary for her to sign said papers to correct her said title and to save her home, and, without allowing her to examine said papers, assured her they were all right and as represented, and peremptorily commanded her, in great haste and austerity of temper, to sign said papers ; that said petitioner was by said statements and conduct of her husband so greatly frightened as to be unable to examine or understand said note and mortgage, or their import, even had she then the opportunity to examine them, and believing said statements made to her by her said husband to be true, and relying thereon and desiring to save her home, and in good faith believing her signature of said papers to be a proper and necessary act to correct a mistake in her title, and believing it to be her absolute duty to obey her husband, and fearing to disobey him, she was constrained to and did, without any consideration, sign said note and mortgage, and the same were then immediately taken away and handed to said Raben.

The said petitioner further averred that she did not at any time appear before W. F. Peck, the notary public before whom said mortgage purports to have been acknowledged, nor before any other officer or person, and

acknowledge the same to be her voluntary act and deed, nor did she ever at any time even speak to said W. F. Peck, nor did he to her, except simply to be introduced to him, nor did she ever acknowledge said mortgage, or the execution thereof, to be her voluntary act and deed, or ever authorize any one to execute said certificate of acknowledgment attached, and the same was written and made and is wholly without authority and is false and untrue.

The petitioner further averred that the mortgage, as declared upon in said action, purports to have been signed by her in the presence of one O. E. Peck, whose signature is appended to said mortgage as an attesting witness, but she averred that said attestation was wholly false and fraudulent and that said O. E. Peck was not present when she signed said mortgage as aforesaid, nor did she ever in any manner recognize said signature to be her own in the presence of said O. E. Peck, nor refer in any way to the same in his presence; nor did she ever sign said mortgage in the presence of any witness who subscribed the same as a witness thereto.

Petitioner further alleged and charged the truth to be that in the whole of said transaction the said F. J. Engle and W. F. Peck acted under the express direction of the said John Raben, and in all respects carried out his said corrupt plans, and that she had no knowledge, information, or notice whatever that said papers so signed by her as aforesaid were a note and mortgage, or that any fraud or deception had been practiced upon her until long after said mortgage had been placed upon record, to-wit, in the fall of the year 1886, and that after she obtained such notice and knowledge and proposed to take the necessary steps to protect her rights in the premises, she was prevented by her said husband from doing so for a long time and until he left said county and went to the state of Colorado, about the 15th day of January, 1887.

Petitioner therefore, under the advice of counsel, as she

alleges, denied that she ever made, executed, or delivered either the note or mortgage declared on by the plaintiff in their action and she submitted to the court that said note and mortgage are null and void as to her; that after she signed the said note and mortgage as aforesaid, the said W. F. Peck appended his said unauthorized certificate of acknowledgment to said mortgage and the said O. E. Peck appended his untrue and unauthorized attestation as a subscribing witness to said mortgage, the said John Raben, who was then and there acting for and as the agent of said W. V. Morse & Co., as well then as in the whole of said transaction, and in all that he did in and about the same, in pursuance of his corrupt plan to cheat, wrong, and defraud petitioner, and by false representations to obtain from her the said mortgage, and receive credit therefor on his said debt, indorsed said note and delivered said note and mortgage to said W. V. Morse & Co., who caused the same to be duly recorded in the office of the county clerk of said county, and the said W. V. Morse & Co. thereafter brought their action in said court to foreclose said mortgage and prosecuted the same to a decree; that the summons issued, served, and returned in said cause purports, by the return thereon, to have been served upon said Catherine Engle by leaving a true and certified copy thereof at her usual place of residence, but petitioner averred the truth to be that said summons was in fact served by leaving such copy at said residence in the hands of her said husband, who retained the same and concealed it from her, and the same did not come into her hands or to her notice; that she had no knowledge, information, or notice whatever of the pendency of said action, suit, or of any suit to which she was a party until long after the decree had been entered in said cause and a request for a stay filed thereon. She further alleged that her said husband employed counsel to defend said action and which counsel in said cause, at the instance and under the direction of her

said husband, appeared therein for her as well as for him, but she averred that said appearance of counsel for her as aforesaid was without her consent or authority; that said counsel had neither knowledge or notice of her said defense nor the facts stated in her said petition touching the manner of obtaining her signature to said note and mortgage, nor did said counsel interpose any defense whatever to the merits of said cause; that the acts of said counsel in said cause, so far as the same affect said petitioner, are null and void, and should be held for naught.   She referred specially to each and every paper filed or of record in said cause and asked that the same might be severally made a part of her said petition as though spread at large therein, and prayed that said judgment and decree might be set aside and vacated and said cause set down for a new trial, etc.   Thereupon the plaintiffs and John Raben, defendant, presented and filed a motion to dismiss the petition of the defendant Catherine Engle filed therein for the reason that said petition and the record in said cause show that actual service of summons was had in said cause, and for the further reason that said petition states no ground or fact which would authorize the court to vacate said decree or grant a new trial.

This motion does not appear to have been acted upon by the court.

The plaintiffs demurred to said petition, which demurrer was overruled.   Thereupon the plaintiffs and said defendant John Raben answered to said petition.   In and by their said answer they denied each and every allegation in said petition contained and not therein expressly admitted.   They further answered and alleged that said note and mortgage were duly executed in the presence of one W. F. Peck, and the execution of said mortgage was duly acknowledged by said Catherine Engle to be her voluntary act and deed, before said W. F. Peck, deputy clerk of the district court of Hamilton county; that said Catherine Engle, long after

the execution of said note and mortgage to the plaintiffs, recognized and admitted the validity of the same; that long after the execution and delivery of said note and mortgage the said Catherine Engle, then being the holder in her own name of a policy of insurance against loss by fire on the dwelling house situated on said lots, for the purpose of further securing the payment of said note, duly assigned and delivered said policy of insurance to the plaintiffs, and any loss under said policy was, by direction of said Catherine Engle, made payable to the plaintiffs, who are the holders of the same; that said Catherine Engle was not in fact the owner of said premises, but held the naked legal title thereto without any equitable right, and in trust for the said F. J. Engle, and the creditors of the said F. J. Engle and John Raben, who were then, and for a long time had been, partners doing business in Aurora under the firm name of Engle & Co.; that about one year prior to the execution and delivery of said note and mortgage said Raben and said F. J. Engle commenced in Aurora in general business under the firm name of Engle & Co.; that prior to entering upon said premises said F. J. Engle had bought and paid for the lots described in the petition from the · defendant Raben, paying for the same wholly out of his own funds, and that after the commencement of said copartnership business the buildings on said lots were erected and paid for out of the money of said copartnership, and that no portion of said buildings, or any other improvements thereon, were ever paid for by said Catherine Engle, but the whole was paid for out of the funds of said copartnership, and out of the proceeds of the sale of goods sold to said firm by the plaintiffs and other creditors of Engle & Co., and that at the time of the execution and delivery of said note and mortgage the said F. J. Engle, in addition to the amount drawn out of the funds of said copartnership for the erection of buildings on said lots and otherwise improving the same, had drawn out large sums of money which had

been applied by him and his wife Catherine to the support of themselves and their family; and defendant Raben answering alleged and submitted that said F. J. Engle & Co. had an equitable interest in said premises to the full extent of improvements thereon, which said improvements he and plaintiffs alleged were of the value of $1,500.

Plaintiffs answering for themselves alleged and said that Catherine Engle never notified or claimed to them that she had not executed and delivered said note and mortgage with full knowledge of the nature and character of the same; that at the time of the execution and delivery of said note and mortgage there was due to said plaintiffs from said Engle & Co. a large sum of money, to-wit, the sum of more than $1,400; that by the execution and delivery of said note and mortgage said plaintiffs were induced to extend the time for the payment of $1,500 of the amount due them from said 7th day of February, 1885, to the 1st day of November, 1885, and induced to rely upon said mortgage as security for said amount and were thereby prevented from collecting the amount of their claim. from Engle & Co., who were then solvent, and who were then the owners of a large stock of merchandise unincumbered, of the value of $10,000; that on the —— day ——, 1886, the said plaintiffs filed their petition in the district court of Hamilton county for the foreclosure of said mortgage and caused a summons to be duly issued and actual service was made thereof upon said defendant Catherine Engle in said Hamilton county requiring her to appear and answer said petition in said court as required by law; that such proceedings were afterwards had that on the —— day of ——, 188—, said plaintiffs obtained a decree foreclosing said mortgage; that notwithstanding the foregoing facts, and well knowing that counsel had appeared for her in said cause and had filed a written request for a stay of the order of sale in said cause, and intending to avail herself of the benefit of the action of said counsel, and concealed from the plaintiffs'

attorneys, A. W. Agee and W. J. Stevenson, any claim or pretense that said note and mortgage had not been executed by her with full knowledge of the contents and nature of the same, and without any pretense that said decree had been obtained without her knowledge, or that counsel who appeared in said cause on her behalf acted without authority from her, and that the first knowledge which the plaintiffs or their said attorneys had that said Catherine Engle denied the free voluntary execution of said note and mortgage, or either of them, or that the appearance of counsel for her was unauthorized, was obtained by reading the petition filed herein; that during all the time since the said 7th day of February, 1885, said Catherine Engle has resided in the same city, to-wit, the city of Aurora, Hamilton county, in which the said Agee and Stevenson have resided and within less than 200 yards of their office; that since the execution and delivery of said note and mortgage, and before the time of the filing of the petition of said Catherine Engle, the said Engle & Co. had become insolvent and are still insolvent and wholly unable to pay their indebtedness, and that the only way plaintiffs have of collecting their said claim for which said note and mortgage were given is by the sale of said property under said decree, and they submitted to the court that said Catherine Engle had ratified the action of counsel in appearing in said cause and on her behalf, and that she is estopped from denying the due execution and delivery of said note and mortgage, or the validity of the proceedings and judgment in said cause.

The plaintiffs denied that the said Raben and F. J. Engle ever acted as agents for them, or with their knowledge or consent made any representations to either said Catherine Engle or her husband, F. J. Engle, and alleged that they received said note and mortgage in good faith, fully believing that the same had been duly executed, witnessed, acknowledged, and delivered by said Catherine Engle and F. J. Engle as to said defendants.

The reply of the said Catherine Engle admitted the signing of her name upon the back of the policy of insurance, named in the answer of plaintiffs, but alleged that she was induced to sign the same by the misrepresentations, fraud, and deceit of her husband, the particulars of which she set out at length; that she signed the same without intent to thereby convey or assign any interest in her said property, and denied that she thereby ratified the said note or mortgage.

There was a hearing and trial to the court, which found the issues joined therein for the plaintiffs, W. V. Morse & Co.; that the said defendant Catherine Engle was not entitled to have vacated and set aside the decree theretofore rendered in said cause in favor of the plaintiffs, and against the defendants; that said Catherine Engle, defendant, was not entitled to a new trial therein, as prayed for in her petition.

The petition of the said Catherine Engle was thereupon overruled and dismissed, a new trial denied, and the decree in said cause affirmed and approved, etc.

The defendant petitioner brings the cause to this court by appeal.

This proceeding was, doubtless, intended to be brought under the provisions of section 602 of the Civil Code, yet I doubt that any of the nine subdivisions of that section is applicable to its facts.    I copy the section:

"A district court shall have power to vacate or modify its own judgments or orders after the term at which such judgment or order was made: First—By granting a new trial of the cause within the time and in the manner prescribed in section three hundred and eighteen.    Second— By a new trial granted in proceedings against defendants constructively summoned, as provided in section seventy-seven.    Third—For mistake, neglect, or omission of the clerk, or irregularity in obtaining a judgment or order. Fourth—For fraud practiced by the successful party in

obtaining the judgment or order. Fifth—For erroneous proceedings against an infant, married woman, or person of unsound mind, where the condition of such defendant does not appear in the record, nor the error in the proceedings. Sixth—For the death of one of the parties before the judgment in the action. Seventh—For unavoidable casualty or misfortune preventing the party from prosecuting or defending. Eighth—For errors in a judgment shown by an infant in twelve months after arriving at full age, as prescribed in section four hundred and forty-two. Ninth—For taking judgments upon warrants of attorney for more than was due to the plaintiff, when the defendant was not summoned, or otherwise legally informed of the time and place of taking such judgment."

The clause of the above section which is cited by defendant petitioner in the brief of counsel is the seventh—"Unavoidable casualty or misfortune preventing the party from prosecuting or defending." The unavoidable casualty or misfortune which it is claimed prevented the party from defending, is the fact that when the summons in the action was served on her by the deputy sheriff, by leaving a copy thereof at her place of residence, her husband, F. J. Engle, kept it, and purposely withheld it from her, so that she had no actual notice or knowledge of it. The return of the officer indorsed upon the summons, as returned and in the record, shows personal service upon the said defendant by leaving a copy thereof at her place of residence, in the proper county, and Mr. Whiteside, deputy sheriff, who was sworn as a witness, testified to the making of such service, and F. J. Engle, who was also sworn as a witness for defendant, at the hearing testified that Mr. Whiteside came to him at the flour store and served the summons on him; that he told him (Whiteside) that he would take the other copy up to his (witness's) wife; he replied, no, that he must serve it in person, and left; that he came up in the evening and came to the door just as witness was in at supper;

witness went to the door; witness continued: "He asked for my wife; I told him she was in the sitting room, engaged with company, and he handed me the summons, and I put it in my pocket." He also stated that he did not give it to his wife, nor did he say anything to her about it, nor did he know that she ever saw it. He further stated that he did not know what finally became of said copy of summons, but suggests that he might have burned it with a lot of similar papers which he burned some five or six weeks afterwards, when about starting to Colorado. It is not suggested that F. J. Engle was prevented, by casualty or misfortune, from delivering this copy to his wife, or informing her of its nature and contents, but on the contrary it is apparent that he put himself in the way of getting possession of it, for the purpose and with the design of keeping it, and the knowledge of it away from her ; nevertheless, the service of the summons upon Catherine Engle was complete and legal personal service, within the meaning of the statute.

Had the defendant been prevented from receiving the copy by any act or procurement of the plaintiffs, then, although the service would have been complete under the statute, it would have come within the fourth clause of the section above copied, "fraud practiced by the successful party in obtaining the judgment or order," and would doubtless entitle the defendant to the remedy. But there is no fact proven even tending to connect the plaintiffs with any fraud or deception in the case.

The service of the summons having been made on the petitioning defendant in strict accordance with section 69 of the Code, nothing connected with or incident growing out of such service can be held to be an unavoidable casualty or misfortune preventing the party from defending, within the meaning of the seventh clause of the section.

It is scarcely deemed possible that the petitioning defendant sought to bring her application under the provisions of
35

the fifth clause of the section above copied.   In the case of
*Pope v. Hooper*, 6 Neb., 178, it was held, but by a divided
court, in effect that the fifth clause of said section was
repealed by implication by the act of June 1, 1871, com-
monly called the married woman's act (in so far as it
applied to married women as such).   It is, however, not
necessary to review said case, as by the language of the fifth
clause of the section it is confined in its operation to cases
where there are erroneous proceedings against an infant,
married woman, or person of unsound mind, where the
condition of such defendant does not appear in the record.
Here the condition of the petitioning defendant, as a mar-
ried woman, does appear in the record, to-wit, in the find-
ings and decree of the court.

It therefore appears that the facts presented by the said
defendant in and by her petition fail to present a case
within any of the provisions of the said sections.

The greater part of the evidence of the defendant chiefly
making up the voluminous record is devoted to facts con-
nected with the manner in which the petitioning defendant
was induced to execute the note and mortgage upon which
the decree was rendered.   There is a large amount of tes-
timony tending to prove that the petitioning defendant was
induced to affix her signature to the note and mortgage, also
to an assignment of a policy of insurance, by deception,
misrepresentation, and fraud on the part of her husband, F.
J. Engle, instigated, as is claimed, by John Raben; also that
the deputy clerk who executed the certificate of the ac-
knowledgment of the mortgage did not in fact take the
acknowledgment of Catherine Engle.   But it is sufficient
to say that all of the material facts contained in such testi-
mony were contradicted by the testimony of plaintiffs' wit-
nesses and that the whole evidence taken together fully
sustains the finding and order of the district court.

It is not deemed necessary to follow counsel for appel-
lant in the discussion of the homestead law, in its applica-

tion to this case, further than to say that I do not think that the fact that the real estate, described in the mortgage, was and is occupied by the petitioning defendant and her implicated husband as their homestead, possesses any significance, or has any bearing. Although the title was in her, she could neither convey nor incumber it without his ·joining her therein, but there is no claim or suggestion that ·he refused or failed to sign or acknowledge the mortgage. As to her, she had the same power and right to sign and acknowledge, or to refuse to do either, a mortgage upon this property as she would have had had it possessed no homestead quality whatever; and, while the fact of the homestead quality of the property involved may tend to add to the enormity of the conduct of F. J. Engle, as testified to by him and other witnesses, it does not tend, in any degree, to connect the plaintiffs therewith.

The order of the district court is affirmed.

JUDGMENT AFFIRMED.

MAXWELL, J., concurs.

NORVAL, J., having been the judge in the district court, took no part in the decision.